# In the

# United States Court of Appeals

## For the Seventh Circuit

————————

No. 07-2550

JOCELYN I. BOLANTE,

*Petitioner,*

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,

*Respondent.*

————————

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A95-719-764

————————

ARGUED FEBRUARY 11, 2008—DECIDED AUGUST 27, 2008

————————

Before BAUER, KANNE and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.*   Petitioner Jocelyn I. Bolante, a
native and citizen of the Philippines who was detained
while attempting to enter the United States without a
valid visa, sought asylum and withholding of removal.
The Immigration Judge ("IJ") denied him relief, and the
Board of Immigration Appeals ("BIA") affirmed. He now
appeals that determination. Because we find that Bolante

has not demonstrated a well-founded fear of persecution upon returning to the Philippines, we affirm the decision of the IJ as supplemented by the BIA.

In 2001, Bolante was appointed to serve as Undersecretary for the Philippines Department of Agriculture by the current president of the Philippines, Gloria Macapagal-Arroyo. Bolante remained in that position until 2004, when he resigned to take a position on the Board of Directors of Rotary International. Following his resignation, the Senate of the Philippines formed a committee to investigate charges of corruption within the Department of Agriculture. This Committee alleged that President Arroyo diverted funds from the Department to fund her reelection committee and investigated claims that Bolante took direction from Arroyo to divert the funds; the Committee eventually issued a report on the corruption scandal, dubbed by the media the "Fertilizer Scam." The report found that Bolante was the main architect of a diversion of funds and recommended that he face criminal charges. The Committee further recommended that other members of President Arroyo's government, including Felix Montes, the Assistant Secretary of Agriculture, be criminally charged.

During the Senate Committee's investigation, Bolante was subpoenaed to testify. After receiving the subpoena, Bolante left the Philippines for a series of Rotary International meetings. He has since refused to testify before the Senate Committee, and the Senate has issued a warrant for his arrest. Media reports have indicated that several members of the Senate have set a bounty for Bolante's capture at 200,000 Philippine pesos.

Bolante was admitted to the United States as a non-immigrant visitor on January 2, 2006, and remained in the country until June 2006, when he left for further meetings in other countries. He attempted to return to the United States on July 7, 2006. Unbeknownst to Bolante, the United States Embassy in Manilla had revoked his visa. He was denied entry into the United States and detained by authorities for non-possession of a valid visa. Bolante has remained in custody pending our review.

On September 27, 2006, Bolante filed an application for asylum and withholding of removal with the Immigration Court. At the hearing on the merits of his claim before the IJ, four witnesses, including Bolante, testified.

Bolante testified that the entire investigation into the Fertilizer Scam amounts to nothing more than vindictive political gamesmanship. According to Bolante, the party in opposition to President Arroyo has engaged in an all-out campaign to overthrow the Arroyo government. After two attempts to impeach President Arroyo, the opposition party switched tactics and turned to frivolous investigations of lesser targets, such as Bolante, with close affiliations to the President but without testimonial immunity given to cabinet members. Bolante has consistently denied any wrongdoing in the Fertilizer Scam, and has challenged the validity of both the Senate Committee's investigation and the warrant for his arrest in the Philippine courts.

Bolante's son, Owen, flew from the Philippines to testify at the hearing. He stated that he and his family have received numerous threats, including a threatening text

message. One such warning involved a threat of kidnapping. He further stated that he and his family have seen suspicious cars near their home. Bolante's son could not state who threatened him or elaborate on how the threats related to his father.

Montes, the Assistant Secretary of Agriculture mentioned in the Senate Committee's report, testified before the IJ that President Arroyo's enemies are using Bolante as a tool to get to the President. He also testified that Bolante's life would be in certain danger if he returned to the Philippines, but could not give specific details about the threat, and used equivocal words such as "might," "could," and "may" to describe the harmful consequences of Bolante's return. For his own part, Montes has testified before the Senate Committee on the Fertilizer Scam, even though he had immunity from doing so. He has since kept his position in the Department of Agriculture and has not been arrested or harmed.

Finally, Adolph Estrada, a retired Major General with the Philippine Air Force, testified about the nature of the danger facing Bolante upon his return. Though Estrada insisted that Bolante would be harmed, he, like Montes, could not give any specifics on the nature, source, or motivation of the threat facing Bolante.

On February 9, 2007, the Immigration Judge ("IJ") denied Bolante's application for asylum. The IJ found that, though Bolante was credible, he failed to meet his burden of past persecution or well-founded fear of future persecution. The judge noted that the vague threats and opaque predictions of harm were insufficient to establish

Bolante's claim. The judge further found that the Senate Committee, by issuing the subpoena and warrant, sought to investigate and eventually prosecute Bolante for a violation of the Philippine law, and not persecute him on account of political opinion or membership in a particular social group. In addition, the IJ held that because Bolante failed to meet the lower burden of proof of asylum, he could not meet the higher standard for withholding of removal. On June 25, 2007, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision and issued its own decision and order. This timely appeal followed.

Bolante argues that we should reverse because he has met the standards for both asylum and withholding of removal. He argues that he has a well-founded fear of persecution upon returning to the Philippines, and that the central reasons for the persecution were on account of his political opinion and membership in a particular social group.

Where, as here, the BIA adopts the IJ's decision while supplementing the decision with its own reasoning, the IJ's decision, as supplemented by the BIA's decision, becomes the basis for review. *See Aung v. Gonzales*, 495 F.3d 742, 745 (7th Cir. 2007). We review the denials of asylum and withholding of removal under the substantial evidence standard. *Id.* Under this deferential standard, we uphold the decision so long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole*." Oryakhil v. Mukasey*, 528 F.3d 993, 998 (7th Cir. 2008) (quoting *Chatta v. Mukasey*, 523 F.3d 748, 751 (7th

Cir. 2008)). We will overturn the decision to deny relief "only if the record compels a contrary result." *Id.* (quoting *Mema v. Gonzales*, 474 F.3d 412, 416 (7th Cir. 2007)).

Bolante has the burden of establishing eligibility for asylum. *Firmansjah v. Gonzales*, 424 F.3d 598, 601 (7th Cir. 2005). Bolante may prove that he is a refugee, and therefore eligible for asylum, by showing that he is unable or unwilling to return to the Philippines because of a well-founded fear of persecution on account of his race, religion, nationality, membership of a particular social group, or political opinion. *Tadesse v. Gonzales*, 492 F.3d 905, 908 (7th Cir. 2007) (citing 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A)).

"Persecution" means more than harassment, and may include such actions as "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Gomes v. Gonzales*, 473 F.3d 746, 753 (7th Cir. 2007) (citing *Toptchev v. INS*, 295 F.3d 714, 720 (7th Cir. 2002)). We have also defined "persecution" as behavior that threatens "death, imprisonment, or the infliction of substantial harm or suffering." *Boci v. Gonzales*, 473 F.3d 762, 766 (7th Cir. 2007) (citing *Sharif v. INS*, 87 F.3d 932, 935 (7th Cir. 1996)).

Unless a petitioner establishes *past* persecution—and Bolante has abandoned on appeal his claim that he was persecuted in the past—a petitioner must show that the fear of future persecution is subjectively genuine and objectively reasonable. *Ahmed v. Gonzales*, 467 F.3d 669, 674 (7th Cir. 2006). The "subjective" component rests primarily on the applicant's testimony and the credibility of that

testimony. *Capric v. Ashcroft*, 355 F.3d 1075, 1085 (7th Cir. 2004). The IJ found Bolante's testimony to be credible, which satisfied the subjective element. We will not disturb this finding. The "objective" component may be established "either through the production of specific documentary evidence or by credible and persuasive testimony." *Gjerazi v. Gonzanles*, 435 F.3d 800, 808 (7th Cir. 2006) (citation and internal quotation omitted). An asylum applicant must "present *specific, detailed* facts showing a good reason to fear that he or she will be singled out for persecution." *Ahmed v. Ashcroft*, 348 F.3d 611, 618 (7th Cir. 2003) (emphasis in original) (quoting *Sayaxing v. INS*, 179 F.3d 515, 520 (7th Cir. 1999)).

We agree with the IJ's decision that Bolante's fear of persecution is objectively unreasonable. Bolante has not produced enough specifics or details about the fear of persecution that he faces in the Philippines to carry his burden. The threats to Bolante's son and family do not identify the source of the threat and do not indicate that they are motivated by any animus towards Bolante. The testimony of Montes and Estrada that Bolante would be in danger upon return also fails for lack of specificity, particularity, or substantiality. Bolante points to the bounty as support for his fear, but the details of the bounty, and the use of bounties in the Philippines in general, lack any real clarity. Even if the bounty still exists, it does not show any threat of long-term harm to Bolante; the sole purpose of the bounty is to secure Bolante's testimony before the Senate Committee.

It is by no means a stretch to suggest that the core of Bolante's fear is, in fact, a fear of *prosecution* for his alleged

role in a corruption scandal. Though prosecution can become persecution, courts uniformly recognize that a foreign state's prosecution of its citizens for violating its own laws does not automatically equate with persecution. *See, e.g.*, *Guchshenkov v. Ashcroft*, 366 F.3d 554, 559 (7th Cir. 2004); *Shardar v. Ashcroft*, 382 F.3d 318, 323 (3d Cir. 2004); *Bandari v. I.N.S.*, 227 F.3d 1160, 1168-69 (9th Cir. 2000). We have held that "prosecution for activities that would be illegal under our own laws is not grounds for asylum." *Guchshenkov*, 366 F.3d at 559. Similarly, being suspected of a crime does not necessarily render an asylum applicant eligible for asylum. *See Djouma v. Gonzales*, 429 F.3d 685, 688 (7th Cir. 2005).

The difficulty lies in how to fashion the nature of the potential prosecution against Bolante—that is, whether the prosecution of the Senate Committee would be of a political nature or legitimately related to graft or corruption. Bolante may be correct that he is but a pawn in the opposition party's efforts to oust President Arroyo. But if he concurrently acted to further a scheme to defraud the Philippine public trust and divert funds to a political campaign—activity that would certainly be illegal under our own laws—then facing prosecution for his acts would not be grounds for asylum.

A more fundamental problem for Bolante is that he does not presently face prosecution. No charges have been filed against him, and although the Senate Committee has recommended charges against Bolante, they have also recommended charges against Montes, who has yet to face prosecution. Other members of President

Arroyo's government, including Montes, have testified before the Senate Committee on the Fertilizer Scam and have not been physically harmed or unjustly prosecuted.

In short, the record does not establish that any harm will come to Bolante on his return; it is not even certain that he will face arrest or have to testify before the Senate Committee, given that Bolante has contested the validity of both.[1]

Because we find that Bolante cannot meet his burden of proof on his asylum claim, his withholding of removal claim must fail *a fortiori*. *Soumare v. Mukasey*, 525 F.3d 547, 552-53 (7th Cir. 2008).

Accordingly, we DENY the petition for review and AFFIRM the judgment of the IJ as supplemented by the BIA.

---

[1] Because we find that Bolante has not demonstrated a well-founded fear of persecution, we need not address whether the persecution was on account of a political opinion or social group.