# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1130

HAICHUN LIU,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR. , Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A097-838-869.

ARGUED AUGUST 7, 2012—DECIDED AUGUST 31, 2012

Before POSNER, TINDER, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Haichun Liu, a 50-year-old native and citizen of China, came to the United States over a decade ago after protesting the loss of his job at a state-owned factory. He petitions for review of an order of the Board of Immigration Appeals upholding the immigration judge's denial of his requests for asylum, withholding of removal, and relief under the United

Nations Convention Against Torture. Because the Board's decision is supported by substantial evidence, we deny the petition.

Liu arrived in the United States as a nonimmigrant visitor in 2000 and overstayed. He came to the government's attention while working at a restaurant in Wisconsin. The government began removal proceedings against him in 2008, charging him with overstaying and violating the conditions of his admission. See 8 U.S.C. § 1227(a)(1)(B), (C)(i). Liu conceded removability but sought asylum and withholding of removal based on political opinion, as well as relief under the Convention Against Torture.

At a hearing before the immigration judge, Liu — who is from the large industrial city of Fushun (Liaoning Province) in China's northeastern rustbelt — testified that he was persecuted after protesting layoffs at Huafeng, a state-owned machinery factory. Liu worked at Huafeng as a welder from 1980 until 1999, when he and half the workforce were laid off because of the factory's restructuring. Liu met with a company manager three times to ask for his job and benefits back. At the third meeting, Liu brought along sixteen co-workers and pled that they had to "get back our insurances and benefits" to survive. Liu testified that he became "very emotional" during the meeting and used "aggressive" language and swear words. The manager accused the group of making trouble. After the meeting devolved into "verbal quarrels," Liu testified, security personnel handcuffed him and brought him to the police station, where

officers accused him of "interfering with the social or-
der." The next day jail inmates interrogated Liu. When
he refused to answer, the inmates beat him — kicking
him, pulling his hair, hitting him with a belt, and
knocking his head against a wall — for ten minutes until
he lost consciousness.

Liu was released from the police station five days
later after he admitted to wrongdoing and, he testified,
promised not to "make such a scene again" or to "report
on the company anymore." He went to the hospital for
an x-ray and medications. (Liu testified that he did
not know the x-ray results, but that his body was
bruised and swollen and he had internal injuries in
his lower back.) Later Liu wrote an anonymous letter to
the civil complaints department of the municipal gov-
ernment complaining, he testified, about "how corrupted
the company leadership was" and how "despite the
hardship of the worker's life," they still laid off many
workers. He did not keep a copy of the letter because,
he said, he feared revenge. Presumably because the
letter was anonymous, Liu received no response to it.
He testified, however, that the municipal government
knew the letter was written by "one of the people who
was laid off by this company." Public officials later
told Liu's wife that he would face "serious consequences"
if he continued to make trouble. Five months later, Liu
left China for the United States, but he learned from
his wife that officials often came by their home asking
about his whereabouts. At the hearing, Liu testified that
he never belonged to any political organization in China

or the United States, and he acknowledged that he "didn't do anything to protest or criticize the government of China."

The immigration judge found Liu removable and denied his applications for relief. Liu was ineligible for asylum, the judge found, because he filed his application eight years after arriving in the United States and failed to show that he fell within an exception to the one-year filing deadline. Liu was ineligible for withholding of removal, the judge determined, because his alleged persecution did not occur on account of a political opinion: Liu did not engage "in political agitation against state corruption," the judge explained, and "did not publicly express any opposition." Although Liu sent an anonymous letter about corruption, he offered no evidence that authorities knew he wrote it. Ultimately, the judge found, Liu was a "private actor" whose "emotional outburst led to his detention." The judge also said that Liu's medical treatment after the beating suggested only "superficial injury." And although his testimony was credible, the judge noted, Liu did not corroborate it with letters from family or friends. The judge found that the police visits to Liu's wife did not establish a clear probability of future persecution because his family remained unharmed. Finally, the judge found Liu ineligible for Convention Against Torture protection because he failed to show that he would likely be tortured upon returning to China. The Board of Immigration Appeals agreed with the judge's rationale and upheld the decision.

In his petition, Liu first asserts that the immigra-
tion judge wrongly dismissed his asylum application
as untimely and insists he provided a "legally sound
reason to establish an exceptional circumstance" to
the one-year bar. But Liu does not identify why extra-
ordinary or changed circumstances excuse his late
filing, see 8 U.S.C. § 1158(a)(2)(D), so his undeveloped
contentions are waived. See *Raghunathan v. Holder*, 604
F.3d 371, 378 (7th Cir. 2010); *Wang v. Gonzales*, 445 F.3d
993, 999 (7th Cir. 2006). Because Liu did not discuss the
Convention Against Torture claim in his opening brief,
he has waived it as well. See *Haxhiu v. Mukasey*, 519
F.3d 685, 692 (7th Cir. 2008); *Huang v. Gonzales*, 403 F.3d
945, 951 (7th Cir. 2005).

Liu focuses on the denial of his application for with-
holding of removal, arguing that the record compels
the conclusion that he was persecuted because of a
political opinion that he held. Specifically, he argues
that his efforts in organizing sixteen co-workers in
"waging the protests" at Huafeng constituted a "matter
of public concern." He contends that the immigration
judge "ignored" both his anonymous letter in which
he "expose[d] the corruption of the leadership" and the
fact that public officials told his wife to forward warnings
to him. He identifies the correct legal standards: to
qualify for withholding of removal based on political
opinion, Liu had to show a clear probability that his life
or freedom would be threatened on account of political
opinion if he returns to China. See 8 U.S.C. § 1231(b)(3)(A);
8 C.F.R. § 1208.16(b); *Prela v. Ashcroft*, 394 F.3d 515, 519 (7th
Cir. 2005). We review the agency's decision denying

withholding of removal for substantial evidence and may reverse "only if the evidence compels a different result." *Abraham v. Holder*, 647 F.3d 626, 632 (7th Cir. 2011); see 8 U.S.C. § 1252(b)(4)(B).

The factory closures, mass layoffs, and labor unrest in China's northeast region in the 1990s — like those described in Liu's petition — set the stage for large-scale political protests condemning official corruption. See *Reforming the north-east: Rustbelt revival*, The Economist (June 16, 2012), *available at* http://www.economist.com/node/21556988; U.S. Dep't of State, 2002 Country Report on Human Rights Practices: China (Mar. 31, 2003), *available at* http://www.state.gov/j/drl/rls/hrrpt/2002/18239.htm. Courts have granted petitions for review of laid-off Chinese workers who publicly condemned government misconduct during this era. See generally *Hu v. Holder*, 652 F.3d 1011, 1013-14 (9th Cir. 2011) (granting petition where petitioner organized 100 laid-off workers to protest in front of city government building, was accused of acting against Communist party, and was detained and beaten); *Bu v. Gonzales*, 490 F.3d 424, 426-31 (6th Cir. 2007) (granting petition where petitioner organized 1,800 factory workers to stage sit-in strike to protest factory officials' corrupt acts and was arrested and beaten).

In Liu's case, however, the record does not compel the conclusion that he was mistreated because of his political activities in arranging his protest at Huafeng, as required for withholding of removal. See 8 U.S.C. § 1231(b)(3)(A). A political opinion is "one that is expressed through political activities or through some sort

of speech in the political arena." *Li v. Gonzales*, 416 F.3d 681, 685 (7th Cir. 2005). Campaigning against the government, writing op-ed pieces, urging voters to oust corrupt officials, founding an anti-corruption political party, actively participating in an anti-corruption party's activities, or speaking out repeatedly as a "public gadfly" are classic examples of political speech. See *Musabelliu v. Gonzales*, 442 F.3d 991, 995 (7th Cir. 2006); *Marquez v. INS*, 105 F.3d 374, 381 (7th Cir. 1997). Liu did not engage in these political activities. As he conceded, he never belonged to a political organization or demonstrated against the Chinese government. Rather, he organized co-workers at Huafeng to ask for their jobs and benefits back; this was an economic demand, not a protest of government corruption. Cf. *Hu*, 652 F.3d at 1013-14; *Bu*, 490 F.3d at 426-31. Furthermore, he was removed from the Huafeng premises for causing a "verbal quarrel," not for the content of the protest. (After all, he previously met with his manager posing the same grievances without incident.) See *Zhang v. Gonzales*, 452 F.3d 167, 172 (2d Cir. 2006) (finding no political persecution where police removed Chinese petitioner from factory premises when she organized protest of layoffs).

Liu's testimony that he composed an unsigned letter asserting corruption in the layoffs does not transform his economic protest into a political one. He never publicly acknowledged writing the anonymous letter or testified that anyone knew he wrote it. Cf. *Hu*, 652 F.3d at 1018. Although at oral argument Liu's counsel insisted that Chinese officials knew he wrote the letter because they could identify his handwriting, Liu never

testified to that effect. Nor does any other evidence in the record support this assertion. Liu testified that officials knew only that some laid-off worker from Huafeng wrote the letter, not that he wrote it.

The lack of compelling evidence that Liu was mistreated because of his political opinion is "a more important consideration in an evaluation of [his] claim of persecution" than the severity of his injuries following his beating and detention. See *Zheng v. Holder*, 666 F.3d 1064, 1066 (7th Cir. 2012). The mistreatment must be on account of his political activity, and as we have explained, the judge did not err by finding that Liu's activity was economic, not political. For this reason, we must deny his petition for review.

We are troubled, however, that the immigration judge and Board concluded that Liu did not experience past persecution because, in their view, the beating and detention caused only "superficial injury." The Board has not defined persecution, and although in the past we have determined that evidence of government-sanctioned or tolerated beatings did not necessarily compel a finding of past persecution, see, *e.g.*, *Mema v. Gonzales*, 474 F.3d 412, 416-18 (7th Cir. 2007); *Zhu v. Gonzales*, 465 F.3d 316, 318-20 (7th Cir. 2006); *Dandan v. Ashcroft*, 339 F.3d 567, 573-74 (7th Cir. 2003), we have recently clarified that "the physical force [at issue in persecution] need not be so great as to inflict a serious injury." *Zheng*, 666 F.3d at 1067, citing *Beskovic v. Gonzales*, 467 F.3d 223, 224 (2d Cir. 2006); see also *Stanojkova v. Holder*, 645 F.3d 943, 948 (7th Cir. 2011) (explaining that although past persecution

sometimes involves "the use of *significant* physical force against a person's body, or the infliction of comparable physical harm without direct application of force," it also includes "nonphysical harm of equal gravity").

In this case, Liu testified that he was struck with a belt until he fainted, his body was bruised and swollen, and he had internal injuries in his lower back. He did not have medical records of the x-ray results, but he was not required to document organ damage to prove that the beating amounted to persecution. See *Bu*, 490 F.3d at 427, 430 (beating constituted persecution where petitioner testified that beating by inmates caused bleeding, vomiting, lost consciousness, and blood clots on petitioner's body). Nonetheless, even if the beatings were carried out, approved, or tolerated by the government, the ground for the beating must be one of the grounds listed in 8 U.S.C. § 1231(b)(3)(A). *Zheng*, 666 F.3d at 1067. The record here does not compel the conclusion that Liu's political opinion provided the ground for his beating and detention.

Liu also argues that he established a clear probability of future persecution on account of his political opinion because the police occasionally visit his wife's house to ask where he is. But inquiries about his location, without any threats to his "life or freedom," do not compel a conclusion of future persecution on account of political opinion. See 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b). Moreover, the mistreatment that Liu experienced occurred over a decade ago, and despite the police inquiries, his family in China has never been harmed. See *Marquez*, 105 F.3d at 380.

Finally, Liu maintains that because the immigration judge found him credible, the judge erred in requiring corroboration of past or future persecution with letters from family and friends. But because the REAL ID Act applies to Liu's case, once the judge determined that he should provide corroborating evidence, he was required to do so unless he showed that he could not reasonably obtain that evidence. See 8 U.S.C. §§ 1158(b)(2)(B)(ii), 1229a(c)(4)(B), 1231(b)(3)(C), 1252(b)(4); *Krishnapillai v. Holder*, 563 F.3d 606, 618 (7th Cir. 2009). Liu contends that he gave a reasonable explanation for not acquiring letters from his family or friends: he did not want to implicate them or put them at risk. But if Liu organized a protest of sixteen people who were already willing to go public with their grievances, it is not unreasonable to expect that at least one of them would provide a statement. See *Abraham*, 647 F.3d at 633. In any event, because the judge did not err by finding that hostility to Liu is not politically motivated, it cannot support the relief of withholding of removal even if the hostility need not have been corroborated. The agency did not err in determining that Liu's claim did not justify withholding of removal.

For these reasons, the petition for review is DENIED.