NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 13, 2013
Decided June 21, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-3621

| | |
|---|---|
| ROSA ISIDORA CHOC, | Petition for Review of an Order of the |
| *Petitioner,* | Board of Immigration Appeals. |
| | |
| *v.* | No. A088 250 632 |
| | |
| ERIC H. HOLDER, JR., | |
| Attorney General of the United States, | |
| *Respondent.* | |

**O R D E R**

Rosa Isidora Choc, a Belizean citizen of Mayan descent, petitions for review of an order of the Board of Immigration Appeals upholding the immigration judge's ("IJ") denial of her applications for asylum, withholding of removal, and protection under the Convention Against Torture. Choc fears persecution by the Creole population in Belize because she is Mayan and the wife of a Chinese business owner. Because substantial evidence supports the IJ's and the Board's conclusions that Choc was not persecuted and is not likely to suffer future persecution, we deny the petition for review.

Choc and her husband, Hui Quan Qiu, entered the United States on tourist visas in 2001 and overstayed. In 2009 the government charged Choc as removable. *See* 8 U.S.C. § 1227(a)(1)(B). Choc conceded removability and requested a continuance to prepare an

application for asylum. (Qiu was separately charged as removable; the IJ declined to consolidate the cases.)

Belize, which sits between Mexico and Guatemala, hosts a large immigrant population. A plurality of the population—about 49 percent—is of Spanish ancestry; another 25 percent are Creole and 10 percent are Mayan. *See* CIA World Factbook, Belize, https://www.cia.gov/library/publications/the-world-factbook/geos/bh.html (last updated June 10, 2013). Various additional ethnic groups make up the remainder of the population, a small percentage of which are Chinese. *See id*. Tension among the ethnic groups, "particularly resentment of recently arrived Central American and Asian immigrants," leads to "discrimination characterized largely by verbal mistreatment." *See* U.S. Dep't of State, 2010 Country Reports on Human Rights Practices: Belize, Apr. 8, 2011, http://www.state.gov/documents/organization/160154.pdf. There is also a high incidence of violent crime in Belize, including armed robberies of individuals and businesses. *See* U.S. Dep't of State, Country Specific Information: Belize, Feb. 7, 2013, http://travel.state. gov/travel/cis_pa_tw/cis/cis_1055.html. Choc's husband, like many Chinese Belizeans, owned a grocery store in the country. *See Chinese Businesses in Belize Close in Protest Over Murders*, CARIBBEAN NEWS NOW (Apr. 5, 2011), http://www.caribbeannewsnow.com/ headline-chinese-businesses-in-belize-close-in-protest-over-murders-5840.html (estimating the percentage of grocery stores owned by Chinese Belizeans as 95 percent).

Choc applied for asylum, withholding of removal, and relief under the CAT in June 2011, asserting that the Creole population in Belize discriminates against people of Mayan and Chinese descent and targets the families of Chinese business owners for crime. She based her persecution claim principally on an incident that took place in 2001 at a grocery store owned by Qiu. As Choc and Qiu were closing for the day, two men—wearing masks and armed with knives and guns—burst into the store, held a gun to Choc's head, and demanded money from Qiu. They took the day's profits and then one of them shot Qiu in the back. Qiu survived but the bullet could not be removed from his body and he still has difficulty walking. If Choc and her family return to Belize, she believes that they "will be [the] target of discrimination, intolerance and racism" and "might even be killed" by the two intruders.

At the asylum hearing, Choc maintained that the robbers targeted her husband's store because of the couple's ethnic backgrounds. Although she testified that she does not know "exactly who [the robbers] were," she suspected that they were likely "robbing all the Chinese people who own their businesses." (Qiu, who also testified at the hearing, concurred that the robbers targeted his store because he is Chinese.) Choc reported the robbery to the police. After a few days, they took a suspect into custody, but, Choc said,

they later released him. Choc and Qiu left Belize several months later. Choc testified that she soon returned for one week to retrieve her son and learned that the robbers were still looking for her and her husband—"want[ing] us dead." More recently her mother, who still lives in Belize, informed her that crime against Chinese businesses is rising and that Qiu's cousin, another Chinese store owner, was killed after their departure. Choc also submitted documentary evidence in support of her application, including State Department reports and news articles.

The IJ denied Choc's application. He concluded that her request for asylum was time-barred because she filed it outside the statutory one-year window and had not established extraordinary circumstances to excuse her tardiness. *See* 8 U.S.C. § 1158(a)(2)(B), (D); *Ishitiaq v. Holder*, 578 F.3d 712, 715 (7th Cir. 2009). The IJ also denied Choc's request for withholding of removal, reasoning that she failed to sufficiently define a particular social group and that she failed to show that she was persecuted because of her or her husband's ethnicity. The IJ credited Choc's description of the grocery-store attack but not her belief that the robbers were motivated by the couple's ethnic backgrounds. The IJ also determined that Choc had not shown that she is likely to be persecuted or tortured if returned to Belize.

The Board of Immigration Appeals dismissed Choc's appeal. The Board assumed that "family members of Chinese business owners in Belize" is a cognizable social group and rejected Choc's speculation that the robbers targeted her because of her membership in that group as "insufficient to show persecution." Absent evidence of any ethnic motivation for the robbery, the Board upheld the IJ's finding that "the robbery was motivated by a desire to seize goods of value." The Board also agreed with the IJ that Choc did not demonstrate that she would be persecuted or tortured upon return to Belize; although she submitted evidence of pervasive crime and some anti-Asian and anti-Mayan sentiment in the country, she did not show that the government would be unable or unwilling to protect her.

Choc does not address the timeliness of her asylum application, so we evaluate only her claims for withholding of removal and protection under the CAT. Where the Board has agreed with the IJ's decision and supplemented that opinion with its own observations, as it did here, we review both decisions. *See Sarhan v. Holder*, 658 F.3d 649, 653 (7th Cir. 2011).

Choc first argues that the IJ and the Board erred by concluding that she has not shown a nexus between the grocery-store robbery and her ethnicity or membership in a

particular social group.[1] *See* 8 C.F.R. § 1208.16(b). She points to her and Qiu's testimony at the hearing as evidence that the robbers targeted Qiu's store because she is Mayan and he is Chinese. Their testimony, however, was speculative, and neither of them asserts that the robbers said or did anything to imply that they were motivated by ethnicity. Choc's documentary evidence fares no better: The generalized language culled from State Department reports and news articles establishes little more than a high incidence of crime in Belize, and Choc presented no particularized evidence that she would be harmed upon return. *See Chen v. Gonzales*, 457 F.3d 670, 674–75 (7th Cir. 2006); *Galina v. INS*, 213 F.3d 955, 959 (7th Cir. 2000). Because Choc and Qiu presented no evidence linking the 2001 robbery to any ethnic animus, the record does not compel the conclusion that Choc suffered past persecution. *See Bueso-Avila v. Holder*, 663 F.3d 934, 938 (7th Cir. 2011) (substantial evidence supported IJ's determination that applicant failed to establish past persecution where record contained no direct evidence that attackers were motivated by applicant's membership in protected group); *Toure v. Holder*, 624 F.3d 422, 428 (7th Cir. 2010) (same); *Aid v. Mukasey*, 535 F.3d 743, 747 (7th Cir. 2008) (same).

Choc also challenges the IJ's and the Board's conclusion that the Belizean government is not unable or unwilling to protect her from persecution. *See Ingmantoro v. Mukasey*, 550 F.3d 646, 650 (7th Cir. 2008); *Meghani v. INS*, 236 F.3d 843, 847 (7th Cir. 2001). Choc testified that she reported the robbery to the police, who arrested one suspect and later let him go. But that the suspect was ultimately released does not establish that the government was complicit in the crime or that it will not protect Choc; in fact, the only evidence of the police's involvement in the robbery is that they initiated an investigation and arrested a suspect. *See Ingmantoro*, 550 F.3d at 650 (concluding that government was not complicit in actions of organization against alien where police responded to complaint and began investigation, even though they made no arrests).

Choc next argues that the IJ and the Board erred by concluding that she is not likely to suffer future persecution if removed to Belize and points in support to statements from 2001 when she returned to Belize to pick up her son and heard that the robbers were trying to locate her. *See* 8 C.F.R. § 1208.16(b). But "inquiries about [her] location, without any threats to [her] 'life or freedom,' do not compel a conclusion of future persecution." *Liu v.*

---

[1] Choc challenges the IJ's conclusion that she did not show that she belongs to a particular social group targeted for persecution. (She does note, however, that the Board assumed for the purposes of her appeal that "family members of Chinese business owners in Belize" constitutes a cognizable social group.) But we need not reach this issue because Choc's application for withholding of removal falls short in other respects, as discussed below.

*Holder*, 692 F.3d 848, 853 (7th Cir. 2012); *see* 8 C.F.R. § 1208.16(b). And though Choc presumes that the robbers "want [her] dead," the robbery occurred over a decade ago and her family—who still lives in the same small village in Belize—has never been harmed. *See Liu*, 692 F.3d at 853; *Ishitiaq*, 578 F.3d at 718; *Marquez v. INS*, 105 F.3d 374, 380 (7th Cir. 1997).

For these same reasons, Choc failed to show that she is entitled to CAT relief, which requires that it be more likely than not that she face torture—not just persecution—if removed to Belize. *See* 8 C.F.R. § 1208.16(c)(2); *Toure*, 624 F.3d at 429.

Accordingly, we **DENY** the petition for review.