In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 11-3081 & 12-2566

LI YING ZHENG,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petitions for Review of Orders of
the Board of Immigration Appeals.
No. A099-358-996

ARGUED APRIL 9, 2012—DECIDED JULY 11, 2013

Before FLAUM and HAMILTON, *Circuit Judges*, and
FEINERMAN, *District Judge*.[*]

FEINERMAN, District Judge. Li Ying Zheng, a citizen of
China, illegally entered the United States in February 1999
and over seven years later applied for asylum and with-

[*] The Honorable Gary Feinerman, of the Northern District of
Illinois, sitting by designation.

holding of removal. The immigration judge denied asylum and found her removable, and the Board of Immigration Appeals dismissed her appeal and ordered her removed. This court docketed as No. 11-3081 Zheng's timely petition for judicial review of the Board's asylum and removal order. After oral argument was heard in No. 11-3081, the Board denied a motion to reconsider that Zheng had filed in September 2011. Zheng then filed a second petition for judicial review to challenge the Board's denial of reconsideration. The second petition was docketed in this court as No. 12-2566, deemed a successive appeal to No. 11-3081, and submitted to this panel. For the following reasons, the first petition is granted and the second petition is denied as moot.

## I. Background

In late 1998, when she was under the legal age for marriage in China, Zheng became pregnant by her then-boyfriend, who also was under age. The government family planning office in Zheng's region in Fujian Province scheduled her for an appointment on December 15, 1998; after failing to appear, Zheng received notice that she was scheduled for a pregnancy examination on January 15, 1999. Days before the scheduled examination, family planning officials brought Zheng to the hospital in Changle City, where she underwent an abortion. Zheng left China shortly thereafter and entered the United States on February 18, 1999. She later married and had one child in July 2000 and another in October 2005.

Zheng filed an asylum application in July 2006. The application claimed that Zheng had undergone a forced abortion in Fujian and that she feared that, if returned to China, she would be sterilized for having had two children in the United States. Zheng was issued a notice to appear on November 1, 2006. The notice charged her as removable pursuant to 8 U.S.C. § 1227(a)(1)(A) for lacking a valid entry document when entering the United States.

On May 27, 2008, after a hearing, the immigration judge delivered an oral ruling that denied Zheng's application for asylum and withholding of removal. The judge held that Zheng had missed the one-year deadline for filing an asylum application, 8 U.S.C. § 1158(a)(2)(B), and did not qualify for any exception to the deadline, *id*. § 1158(a)(2)(D). The judge held in the alternative that even if the birth of Zheng's second child was a circumstance that allowed for an exception to the one-year deadline, asylum would have been denied on the merits because the birth of two children in the United States does not give rise to a well-founded fear of future persecution and thus does not establish eligibility for asylum.

With respect to withholding of removal, the immigration judge found that Zheng had not shown that it was more likely than not that, due to the birth of her two children in the United States, she would be persecuted upon her return to China by means of forced sterilization or otherwise. To support that finding, the judge cited the State Department's *2007 Country Profile of Asylum*

*Claims and Country Conditions for China* ("*2007 Country Profile*"), which the judge read to say that neither the national nor provincial governments in China mandated the sterilization of parents of two children if at least one child was born abroad. The report acknowledged that children born abroad could be excluded from free public education and other social services, which led the judge to recognize that Zheng's children, if they returned with her to China, could face economic hardships. But this, the judge concluded, did not rise to the level of persecution warranting withholding of removal. The immigration judge also denied Zheng's request for withholding of removal based on her claim to have suffered past persecution in China, finding that her testimony regarding her alleged persecution was not credible given various inconsistencies in her account of what had happened to her in China.

Zheng appealed, and the Board of Immigration Appeals dismissed the appeal on August 24, 2011. The Board assumed for the sake of argument that Zheng's application was either timely filed or subject to a valid exception to the filing deadline. On the merits, the Board affirmed the immigration judge's findings that Zheng had not been subject to past persecution and that, if returned to China, she would not face a reasonable possibility of being forcibly sterilized or otherwise persecuted for having had two children without permission while in the United States.

On the latter point, the Board read the *2007 Country Profile* to say that central government policy prohibited

the use of physical coercion to compel persons to submit to abortion or sterilization, and also to say that consular officials visiting Fujian Province had not found any cases of such physical coercion. While acknowledging that there "undoubtedly" had been some instances of forced abortion and sterilization imposed on the parents of children conceived and born in China, the Board stated that "the issue before us in this case is different because the children involved were born in the United States, and hence are citizens of this country," and found that Zheng's evidence "does not document any instance where enforcement measures rising to the level of persecution have been imposed on the parents of children who are United States citizens." And while the Board also acknowledged that violators of China's one-child policy had been fined, it found that enforcement of the policy in Fujian Province had been "lax" and "uneven," that couples unable to pay the fine immediately are allowed to pay in installments, and that Zheng, having lived in the United States for several years, had not established that she would be unable to pay such a fine or that such a fine would rise to the level of persecution.

For these reasons, the Board concluded that Zheng had failed to satisfy her burden of showing an entitlement to asylum. Given this, the Board also held that Zheng had failed to satisfy the higher standard required for withholding of removal.

## II. Discussion

Because the Board "agreed with the [immigration judge] and supplemented his opinion with additional observations of its own[,] . . . we review the [immigration judge's] decision wherever the Board has not supplanted it with its own rationale," and "where the Board has spoken, we review its opinion." *Sarhan v. Holder*, 658 F.3d 649, 653 (7th Cir. 2011); see also *Juarez v. Holder*, 599 F.3d 560, 564 (7th Cir. 2010) ("When . . . the BIA agrees with the IJ's decision but supplements the IJ's decision with its own explanation for rejecting the appeal, we review the IJ's decision as supplemented by the BIA's reasoning."). Our task is to review the denial of relief for substantial evidence, which means that we should deny the petition for review if the Board's decision "is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Moab v. Gonzales*, 500 F.3d 656, 660 (7th Cir. 2007) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

To prevail, an applicant for asylum must show that she is a "refugee," meaning a person "who is unable or unwilling to return to … [her] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Forced abortion or sterilization, or persecution for resistance to coercive population control policies, constitutes persecution on the basis of political opinion. See *ibid*. ("[A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been

persecuted for . . . other resistance to a coercive popula-tion control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such [persecution] shall be deemed to have a well founded fear of persecution on account of political opinion."); *Ping Zheng v. Holder*, 701 F.3d 237, 241 (7th Cir. 2012); *Shi Chen v. Holder*, 604 F.3d 324, 330-31 (7th Cir. 2010). "If [an applicant] establishes that [she] suffered past persecution for a protected reason, a pre-sumption arises that [she] also has a well-founded fear of future persecution for the same reason." *Yi Xian Chen v. Holder*, 705 F.3d 624, 628 (7th Cir. 2013). If an applicant does not establish past persecution, she must show that her fear of future persecution is "subjectively genuine and objectively reasonable." *Bolante v. Mukasey*, 539 F.3d 790, 794 (7th Cir. 2008). To carry her burden of proof as to objective reasonableness, an applicant must present, "either through the production of specific documentary evidence or by credible and persuasive testimony . . . [,] *specific, detailed* facts showing a good reason to fear that he or she will be singled out for persecution." *Ibid.*; *see also Hassan v. Holder*, 571 F.3d 631, 643 (7th Cir. 2009).

We assume for the sake of argument that the Board was correct to conclude that Zheng had not demon-strated past persecution on account of violating China's family planning policies. With respect to whether Zheng demonstrated "a subjectively genuine and objec-tively reasonable" fear of future persecution, *Bolante*, 539 F.3d at 794, the Board did not dispute, and the gov-ernment does not deny here, that Zheng's fear is subjec-

tively genuine, and the record plainly supports Zheng in this regard. Zheng's first petition for review therefore turns on whether she has established an objectively reasonable fear of sterilization or other persecution based upon her giving birth to two children while living in the United States.

In *Chun Hua Zheng v. Holder*, 666 F.3d 1064 (7th Cir. 2012), we considered "how China nowadays administers its one-child policy … in the particular case of a woman who returns to Fujian Province after having given birth to more than one child in the United States, and who having come from Fujian must return there if she is removed from the United States." *Id*. at 1067. We noted that reports by the Australian Refugee Review Tribunal had found that "forced sterilizations and abortions are not official provincial (or national) policy in China and appear to have become rare." *Ibid*. We further noted that, "[a]ccording to the State Department, Fujian is not one of the provinces that require termination of pregnancy if the pregnancy violates provincial family-planning regulations, but instead merely require[s] unspecified remedial measures to deal with unauthorized pregnancies." *Id*. at 1068 (internal quotation marks omitted, second alteration in original). And we observed that "[c]ouples returning to China with children born abroad may be fined" and that "these fines (called 'social compensation fees') are stiff—often beyond the violators' ability to pay," but that "we don't know what happens if they don't pay." *Ibid*. (citations omitted). On that particular record, we held that the petitioner had failed to

establish that it was more likely than not that she would be persecuted if she were returned to China. *Ibid.*

Two more recent decisions, however, have brought to light evidence that casts doubt upon the proposition, central to the Board's decision in this case, that Fujian authorities do not count children born outside of China for purposes of the one-child policy. In *Ni v. Holder*, 715 F.3d 620 (7th Cir. 2013), the petitioner, a Chinese citizen from Fujian, was ordered removed in 2003, managed to remain in the United States, and moved to reopen his removal proceedings in 2011 after the birth of his second child. The Board denied the motion to reopen, holding that Ni's evidence was insufficient to establish a change in circumstances or country conditions.

We granted Ni's petition for review and remanded, reasoning that the Board had failed to properly account for numerous official provincial and local documents of record indicating that conditions "in and around Ni's small hometown of Guantou Town have since worsened" with respect to enforcement of the one-child policy. *Id.* at 626 (citations omitted). (Guantou Town is geographically proximate to Changle City, the area of Fujian Province where Zheng resided.) We did not require the Board to grant Ni relief; rather, noting that "the BIA's opinion does not demonstrate that it reviewed and considered all of Ni's evidence," we "conclude[d] that further proceedings [before the Board] are necessary before Ni's petition for review can properly be assessed." *Id.* at 630; see also *ibid.* ("In closing, we note that we make no prediction on the ultimate outcome of Ni's

motion to reopen or his application for asylum. But he is entitled to have the expert agency, the BIA, evaluate in a transparent way the evidence that he has presented.").

The second decision is *Qui Yun Chen v. Holder*, 715 F.3d 207 (7th Cir. 2013). Like the petitioner in this case, Chen was the mother of two children born to her in the United States. *Id*. at 208. And as in this case, the Board denied Chen's application for asylum based in large part on its reading the *2007 Country Profile* to suggest that the risks of forcing individuals like Chen to return to Fujian were not significant. *Id*. at 209-10. We held that the Board had over-read and placed undue reliance on the *2007 Country Profile*, and also that it had ignored other materials, such as the Congressional-Executive Commission on China Annual Reports (available at http://www.cecc.gov), indicating that Fujian authorities enforce China's one-child policy far more vigorously than the Board had supposed. *Ibid*. We noted in particular that one such document, which we called the "Robert Lin" document, "cuts the ground out from under what the Board called the 'key aspect of the case'—that because Chen's children were born abroad, she is in no danger of being forced to undergo steriliza-tion." *Id*. at 212. The materials of which the Board did not take account, we concluded, resulted in "considerable uncertainty about the application of the one-child policy, and about the sanctions for violating it when a second or subsequent Chinese child is born abroad." *Id*. at 214. We accordingly granted Chen's petition, vacated the Board's order, and remanded to the Board for it to recon-sider Chen's application in light of those materials. *Ibid*.

There is no sound basis for us to resolve Zheng's petition for review differently from the petitions for review in *Ni* and *Chen*. Cf. *Njuguna v. Ashcroft*, 374 F.3d 765, 771 n.4 (9th Cir. 2004) ("The INS must give each asylum case individualized scrutiny, but it is a foundation of the rule of law that similarly situated individuals be treated similarly."). Accordingly, Zheng is entitled to have the Board reconsider her application in light of the materials referenced in those two decisions.

### III. Conclusion

For the foregoing reasons, Zheng's first petition for review is granted. The decision of the Board of Immigration Appeals denying Zheng's application for asylum and withholding of removal is vacated and the matter is remanded for a reevaluation of Zheng's application in light of the evidence referenced in *Ni* and *Chen*. This disposition renders moot Zheng's second petition for review, which challenges the Board's denial of her motion to reconsider the decision denying her application.