# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-2619

XIU QIN CHEN,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals

SUBMITTED MAY 5, 2010—DECIDED JUNE 10, 2010

Before EASTERBROOK, *Chief Judge*, and COFFEY and
HAMILTON, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Xiu Qin Chen, a citizen of
China, seeks asylum in the United States. She contends
that China persecuted her because of her political
opinions and will imprison her because of those opin-
ions should she be returned. Her political opinion, as
she expresses it in this court, is that China should pay
just compensation when it takes private property for
public use. That capitalist principle, enshrined in the

fifth amendment to the Constitution of the United States, is less honored in communist nations.

Chen contends that her home town of Langqi razed about a dozen homes in order to construct a military building. (We recount her story, which the Board of Immigration Appeals accepted provisionally.) Officials promised to provide similarly sized plots of land and to pay for construction of new houses within three months, and to provide rent for transitional housing. The rent was paid, but when four months passed without the transfer of new land or the money to build new homes, Chen filed suit against the local government. The court dismissed that suit, and officials appeared at her family's rented home with a warrant for her arrest. She fled. Police have tried to find her ever since, and when her father refused to reveal her whereabouts he was beaten and his leg broken. But the Board of Immigration Appeals concluded that Chen's lawsuit did not advance a political position, so the government's reaction, though excessive, was not on account of "political opinion" within the meaning of 8 U.S.C. §1158(b)(1)(B)(i).

One circuit has held that litigation is a form of political expression that can make a person eligible for asylum. *Baghdasaryan v. Holder*, 592 F.3d 1018, 1020–21, 1024 (9th Cir. 2010); *Yan Xia Zhu v. Mukasey*, 537 F.3d 1034, 1044–45 (9th Cir. 2008). Another has implied this, see *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 547–48 (2d Cir. 2005), though that decision did not arise from litigation. Chen urges us to follow these decisions and rule in her favor on the political-opinion question, remanding to allow the

agency to address the rest of the statutory issues. Things are not quite that simple, however.

First, the ninth circuit approached the subject as if the judiciary made an independent decision. It does not. The Attorney General, and his delegate the Board of Immigration Appeals, are principally responsible for interpreting ambiguous terms in the immigration laws, and the judiciary must respect administrative decisions that plausibly implement this legislation. See *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), applied to immigration law by *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424–25 (1999). See also *Negusie v. Holder*, 129 S. Ct. 1159, 1163–64 (2009). The alien must establish that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant". 8 U.S.C. §1158(b)(1)(B)(i). These are not self-defining terms, so administrative officials have considerable leeway.

Second, it is necessary to distinguish having a political opinion from the means of its expression. The United States does not allow punishment for anyone's political views—but rules for the time, place, and manner of expression are independent of the speaker's politics. Thus it may be permissible to punish a person for waking up the neighbors with a bullhorn, even though the viewpoint of the amplified statements cannot be penalized. See *Ward v. Rock Against Racism*, 491 U.S. 781 (1989). And a public demonstration that blocks access to a person's home, and spoils the quiet that people need in their daily lives, may be curtailed. See *Frisby v.*

*Schultz*, 487 U.S. 474 (1988). The second and ninth circuits appear to have assumed that the time, place, and manner rules used in the United States apply equally to foreign nations, and that any departure from them penalizes political opinion. That is far from clear to us. The foundation for the time, place, and manner rules is that they do *not* concern the viewpoint or content of the speech. In California, shopping malls are open to political demonstrations, see *PruneYard Shopping Center v. Robins*, 447 U.S. 74 (1980). But if a foreign nation bans political speech at shopping malls and arrests picketers as trespassers, that is not necessarily punishment for "political opinion"; it may be no more than insistence that political opinion be expressed in a different place. Thus if a foreign state decides that litigation is not an appropriate forum for political opinion, it would be hard to characterize that as persecution.

Third, the United States has *itself* limited the expression of political opinion in the courts. True enough, litigation is protected by the first amendment as one of the ways by which the people may petition for redress of grievances. See *Lewis v. Casey*, 518 U.S. 343 (1996); *NAACP v. Button*, 371 U.S. 415 (1963). Cf. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972). But this does not imply that litigation is just politics by other means. See *Caperton v. A.T. Massey Coal Co.*, 129 S. Ct. 2252 (2009). A court is the forum in which legal rights are vindicated, and people who use litigation solely as a pulpit for political protest may be penalized if the suit is objectively baseless. *BE&K Construction Co. v. NLRB*, 536 U.S. 516 (2002).

This record strongly implies that Chen's suit was objectively baseless. It's not just that she lost. She did not own the land. Her parents did, and the government's promise to supply replacement land and pay for a new house was made to her father, not to her. In the United States, a suit complaining about a municipality's failure to pay for real property taken from the plaintiff's parents would be dismissed as frivolous, and an award of sanctions would be likely. Only the owner can sue for compensation. Chen says that she filed the suit because her parents (and the other owners whose land was taken) were afraid to challenge the local government. That makes the suit sound like a political protest but also reveals that it was filed for reasons other than any hope of success and thus abused the legal process. If courts of this nation would deem such a suit frivolous and sanctionable—and not an impingement on the rights of political opinion sheltered by the first amendment—it cannot be political persecution for other nations to think likewise. (Chen says that the court dismissed the suit peremptorily and without explanation, which suggests that the judge found it frivolous.)

This conclusion does not necessarily lead to a decision in the agency's favor, however. The Board assumed that litigation differs from expression of political opinion but did not analyze whether that is so in general, or particularly in China. Perhaps despite appearances China *does* allow political litigation. How China understands the proper use of its courts is a matter for the agency to decide. Yet, as far as we can determine, the

Board has never addressed, in a precedential opinion, the question whether (and, if so, in which nations) it is appropriate to treat suing a unit of government as a legitimate means of expressing one's political opinion. The Board's decision in Chen's case is not precedential and therefore does not count for the purpose of *Chevron*, which requires a formal resolution of a question by rulemaking or adjudication. See *United States v. Mead Corp.*, 533 U.S. 218 (2001); *Ali v. Mukasey*, 521 F.3d 737, 739 (7th Cir. 2008). (But see *Gutnik v. Gonzales*, 469 F.3d 683 (7th Cir. 2006) (concluding that a non-precedential order of a single member receives *Chevron* deference). The apparent intra-circuit conflict was noted in *Joseph v. Holder*, 579 F.3d 827, 833 (7th Cir. 2009). There is no need to resolve it here, any more than in *Joseph*.)

The Board's failure to address the time, place, and manner topic is not the only problem with its disposition. The response to Chen's suit was not a fine or any equivalent sanction but a warrant for her arrest. That step is so disproportionate to the filing of a frivolous suit that it raises the question whether the government was setting out to muzzle a political opponent rather than just to enforce the nation's rules on the appropriate subject matter of litigation. The agency did not consider the possibility that the attempt to arrest Chen revealed that the local government perceived a challenge much different from the annoyance of a suit filed by a person who did not own the confiscated property. The State Department reports that China has been stern in suppressing opposition to its land-acquisition policies, at least when that opposition takes the form of public

gatherings, see 2006 *Country Report: China* 9, 15 (March 2007), and if China has classified Chen as a public protester then perhaps an imputed political opinion is "at least one central reason" for the attempted arrest. The agency needs to consider this possibility; so far it has not done so.

Before conducting a more comprehensive analysis of litigation as political opinion in China, the Board might want to decide whether Chen is telling the truth. The immigration judge disbelieved her, remarking that Chen had not supplied material documents, the absence of which raised suspicions. Chen relates that she was represented by counsel in China. It therefore should be possible to obtain any papers filed on her behalf and learn from counsel whether, as Chen asserts, the court's decision was never transcribed. The warrant for her arrest should be available and could reveal the nature of the charge laid against her. Medical records from her father's treatment likewise may be helpful. The agency could infer that Chen's failure to produce documents that would corroborate her story, if they existed, implies that the documents do not exist and that the story is false. See 8 U.S.C. §1158(b)(1)(B)(ii), (iii); *Mitondo v. Mukasey*, 523 F.3d 784 (7th Cir. 2008). But Chen has offered reasons for not supplying some of these documents. She maintains, for example, that the government directed the hospital to withhold her father's medical records. The agency needs to determine whether Chen's explanation for the records' absence is honest.

There are other potential questions too, such as whether the threat of an arrest is itself persecution, if the nation

has a legal system capable of resolving the prosecuting authority's charges. A fugitive from criminal charges, which is how Chen describes herself, cannot insist that the agency assume that other nations have only kangaroo courts; that proposition requires proof. These and other subjects are open on remand.

The petition for review is granted, and the matter is remanded for proceedings consistent with this opinion.