In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2505

WEIPING CHEN,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR.,
Attorney General of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A089-671-522

ARGUED FEBRUARY 18, 2014 — DECIDED MARCH 10, 2014

Before ROVNER, WILLIAMS, and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge*. Weiping Chen petitions for review of the denials of his requests for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We dismiss the petition for review of the asylum claim for lack of jurisdiction and deny the petition for review of the withholding of removal and the CAT claims.

**I.      Background**

Chen is a native and citizen of China who entered the U.S. in October 2004 as a nonimmigrant visitor with authorization to stay until April 2005. He overstayed and later filed an application for asylum, withholding of removal, and protection under the CAT. A Notice to Appear (NTA) was issued charging him with removability for staying longer than his visa permitted. *See* 8 U.S.C. § 1227(a)(1)(B). He has admitted the NTA's allegations and conceded removability.

At the hearing before the immigration judge (IJ), Chen testified that he left China in 2004 because he was "persecuted by the Chinese government[,] [b]ecause [he] participated in the demonstration against the Chinese government using violence to force people to … demolish the housing and to force people to move." He said that he was detained, beaten, harassed, threatened, and arrested by the police. Chen claimed that he purchased a shop in a market to make more money to pay for medical treatment for his son. He said that not long after he opened his store in April 2004, the government made plans to develop the area. Chen stated that he and the other merchants in the market complained to the district level government that the developers were trying to take over the market without giving them "proper compensation." But the issue was not resolved. Chen testified that he and other merchants were afraid that the developers would tear down their stores, so they stayed overnight in their shops "on April 20th." (He later testified this happened on May 20, which was consistent with his written statement, and he denied (in the same hearing) that he had said it had happened on April 20.)

According to Chen, their fears came true. Later that night, he and the other merchants were forcibly removed from their shops and taken out of the city. He claimed that they walked back to the market and found that it had been torn down and their merchandise had been taken away. Chen stated that he and the other merchants went "to the municipality to … petition." Over one hundred merchants and family members sat in front of the municipal building, "asking [the] government for compensation." Chen claimed that they sat quietly for more than one hour, and then the police arrived to break up the crowd with a "high pressure water gun" and batons. However, Chen and a dozen other merchants refused to leave, so they were forcibly taken to the police station where Chen was beaten, denied food, and handcuffed to a chair. After three days, Chen "was unable to sustain" the mistreatment and signed an agreement stating that he would not approach the government asking for compensation. The police told Chen that he had "interrupted the social order" and asked him to pay a fine and be subjected to monitoring or supervision. Chen was released, but he was required to report to the police station, first on a weekly basis and then on a monthly basis. He said that he reported as required until he left for the United States in October 2004.

Other than that one sit-in protest of the demolition of the market shops, Chen has not participated in any other anti-government demonstration. And he has never been a member of any political organization. Indeed, Chen had a hard time articulating his political opinion, but claimed that the government seeks to persecute him because he participated in the protest and opposed the government.

The IJ found that Chen did not apply for asylum until March 2008, more than three years after his arrival in the United States. She therefore concluded that his asylum application was untimely. The IJ considered Chen's arguments as to why he believed extraordinary circumstances excused his late filing—he did not speak English, he did not understand the law, and he did not have money to hire an attorney (he sent all the money he made home to pay for his son's medical treatment)—but she found that these did not amount to extraordinary circumstances to excuse the untimely filing.

Turning to withholding of removal, the IJ determined that Chen's situation was best characterized as a personal dispute rather than an expression of his political opinion. She found that additional evidence in the record indicated that Chen had not shown that he would be persecuted on account of his political opinion: the fact that after his detention, he satisfied his check-in obligations with the police without incident and his family has lived with his mother-in-law and have reported no incidents with the police or other difficulty, other than with the son's medical condition.

Although the IJ found inconsistencies between Chen's testimony and his written statement, she did not find him incredible. But because of the inconsistencies, she did not find that his testimony was sufficiently persuasive and required him to provide corroborative evidence. Chen failed to provide anything other than one U.S. State Department Report for China ("country conditions report"). Although the IJ found that Chen's claim was plausible in light of the report, the report did not address his particular experiences. The IJ decided that Chen provided insufficient corroborative evi-

dence, noting that he had time to obtain an affidavit from his wife, with whom he was in contact just two months before the hearing. And the IJ did not believe that it would have been beyond Chen's reasonable ability to obtain such an affidavit. She therefore concluded that he had not met his burden of proving that it is more likely than not that he will be persecuted because of his political opinion if removed to China. As for the CAT, the IJ found that since Chen had not met his burden of proving that he would be persecuted if removed to China, he could not show that it is more likely than not that he would suffer harm that meets the definition of torture. The IJ ordered Chen removed to China.

On appeal, the Board agreed with the IJ that Chen failed to timely file for asylum and failed to show extraordinary circumstances or changed circumstances justifying the delayed filing. It also agreed that Chen failed to provide sufficient credible evidence to establish a clear probability of persecution or torture, noting that since he was still in contact with his wife, an affidavit from her was presumably available. And the Board concurred with the IJ's determination that Chen had not shown a likelihood of future persecution on a protected ground, upholding the finding that Chen's situation was a personal dispute rather than an expression of political opinion. Finally, the Board agreed that Chen had insufficient evidence to establish that he more likely than not would be tortured upon return to China. It therefore dismissed the appeal, and Chen petitioned for review.

## II.    Discussion

Chen first challenges the Board's decision affirming the IJ's determinations that he was not eligible for asylum because his asylum application was not filed within one year of

his arrival in the United States and that he failed to establish extraordinary circumstances justifying the untimely filing. Generally, an asylum application must be filed within one year after the alien's arrival in the United States, 8 U.S.C. §1158(a)(2)(B), but an untimely application may be considered if the alien "demonstrates … extraordinary circumstances relating to the delay' in filing … within the prescribed one-year period." *Bitsin v. Holder*, 719 F.3d 619, 625 (7th Cir. 2013) (quoting 8 U.S.C. § 1158(a)(2)(D)). However, we lack "jurisdiction to review a determination regarding the timeliness of an alien's application for asylum or the existence of … extraordinary circumstances to excuse his late filing." *Id.*; *see also* 8 U.S.C. § 1158(a)(3). We dismiss for lack of jurisdiction Chen's petition to review the determinations that his asylum application was untimely and that he failed to establish extraordinary circumstances. The petition was clearly late and the circumstances were typical rather than extraordinary anyway.

Chen also challenges the determination that he did not qualify for withholding of removal. "When the Board agrees with the decision of the immigration judge, adopts that decision and supplements that decision with its own reasoning, as it did here, we review the immigration judge's decision as supplemented by the Board." *Cece v. Holder*, 733 F.3d 662, 675 (7th Cir. 2013) (en banc). The IJ's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Gutierrez-Berdin v. Holder*, 618 F.3d 647, 651 (7th Cir. 2010). We review the decision for substantial evidence. *Bitsin*, 719 F.3d at 628. Under this standard, the decision "'must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as

a whole,' and we will 'reverse[ ] only if the evidence present-ed … was such that a reasonable factfinder would have to conclude' that the petitioner had met his burden." *Id.* (quot-ing *INS v. Elias–Zacarias*, 502 U.S. 478, 481 (1992)).

"An applicant is eligible for withholding of removal if he 'demonstrate[s] a clear probability of persecution on account of'" a protected ground, in this case, political opinion. *Bitsin*, 719 F.3d at 628 (quoting *Tariq v. Keisler*, 505 F.3d 650, 656 (7th Cir. 2007)). Persecution is defined to include "detention, ar-rest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, tor-ture, behavior that threatens the same, and non-life-threatening behavior such as torture and economic depriva-tion if the resulting conditions are sufficiently severe." *Yi Xian Chen v. Holder*, 705 F.3d 624, 629 (7th Cir. 2013) (quota-tion omitted).

In arguing that he will be persecuted, Chen points to the demolition of his store, his arrest, physical beating, and oth-er mistreatment in police custody as well as his allegations that his wife told him that the police came looking for him every month and that she had to move to a remote rural area to avoid trouble. He also asserts that the police think he is opposed to the government. Based on Chen's testimony that he met his check-in obligations with the police without inci-dent and that his family reported no incidents with the po-lice, the IJ found that he had not demonstrated a clear prob-ability that he will be persecuted if removed to China. These facts support the IJ's finding. At most, the record might sup-port Chen's claim that he is likely to be persecuted. Yet the evidence must not only support but *compel* the conclusion that he will be persecuted. *Liu v. Holder*, 692 F.3d 848, 852

(7th Cir. 2012); *Balogun v. Ashcroft*, 374 F.3d 492, 507 (7th Cir. 2004). It does not.

Next, Chen argues that the Board erred when it affirmed the IJ's determination that he was required to produce or adequately explain the absence of evidence corroborating his claims and that he failed to do so. "[W]hen an immigration judge requires an applicant to produce corroborating evidence, that evidence is required (unless it cannot be reasonably obtained), even if the judge finds the applicant credible." *Raghunathan v. Holder*, 604 F.3d 371, 379 (7th Cir. 2010) (citation omitted); *see also* 8 U.S.C. § 1158(b)(1)(B)(ii) ("The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee.") "'No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence … unless the court finds … that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.'" *Raghunathan*, 604 F.3d at 379 (quoting Pub. L. No. 109-13, § 101, 119 Stat. 231, 304 (2005)); *see* 8 U.S.C. § 1252(b)(4). Chen points to no evidence that compels the conclusion that corroborating evidence is unavailable.

Instead, he suggests that the IJ found his testimony credible and persuasive. The record refutes this claim: the IJ explicitly stated she "cannot find that [Chen's] testimony was sufficiently persuasive to meet his burden for withholding without corroborative evidence." Having found that his testimony was not sufficiently persuasive, the IJ was well within her discretion in requiring him to corroborate his claims.

*See Raghunathan*, 604 F.3d at 379 (stating that "an immigration judge exercises 'substantial leeway to demand corroboration of [an alien's] allegations whether or not the judge finds the [alien] credible'") (quoting *Krishnapillai v. Holder*, 563 F.3d 606, 618 (7th Cir. 2009)). Unless Chen can prove that he could not have reasonably obtained corroborating evidence, his failure to produce such evidence is "fatal to [his] claims." *Id.*

Chen asserts that he did provide some corroborating evidence, presumably the country conditions report, but as the IJ noted, the report does not address Chen's particular experiences and thus was insufficient corroboration. *See Krishnapillai*, 563 F.3d at 619 (noting that a United Nations report "did not materially corroborate the events to which [the petitioner] testified" where it addressed "the types of human rights abuses that occur in Sri Lanka but says nothing about what did or did not happen to [the petitioner]"). The IJ did not err in reaching this conclusion. Chen also asserts that he provided a reasonable explanation for not having other corroboration, referring to his testimony about why he did not have a doctor's corroboration for his injuries. But he offers no explanation why he could not have reasonably obtained evidence corroborating other aspects of his claims, for example, that he owned the store, that it was demolished, that he participated in the protest, or that he was detained. An affidavit from his wife or other merchants could have corroborated these facts, and Chen offered no explanation why he could not have reasonably obtained his wife's affidavit. (Nor does he attempt to explain in this court the lack of corroboration from other merchants, but we know from his testimony before the IJ that he claimed he had lost contact with them.) Indeed, he testified that he had spoken with his wife

two months before the hearing before the IJ. The record does not compel the conclusion that Chen could not have reasonably obtained corroborating evidence; therefore, his failure to produce such evidence when required dooms his claims.

According to Chen, the Board also erred in affirming the IJ's finding that he failed to prove he would be persecuted on account of his political opinion. He argues that he "went to the local district government office and complained publicly regarding the unjust taking of his and other merchants' property." In his view, this renders inapposite *Liu v. Holder*, 692 F.3d 848 (7th Cir. 2012), and *Marquez v. INS*, 105 F.3d 374 (7th Cir. 1997). But the comparisons to *Liu* and *Marquez* are apt. In *Liu*, 692 F.3d at 852–53, we held that the record did not compel the conclusion that the petitioner's activity in organizing coworkers to protest their layoffs at a state-owned factory and participating in that protest was political rather than economic activity. We reasoned that the petitioner did not engage in any of the "classic" examples of political activity, such as "[c]ampaigning against the government, writing op-ed pieces, urging voters to oust corrupt officials, … or speaking out repeatedly … ." *Id.* at 852. He "never belonged to a political organization or demonstrated against the Chinese government." *Id.* Rather, he organized his coworkers "to ask for their jobs and benefits back," which "was an economic demand, not a protest of government corruption." *Id.*

Chen's protest was similarly non-political. He did not engage in any of the classic examples of political activity; instead, he participated in one sit-in to protest the taking of his property without compensation. The sit-in was public, and Chen was accompanied by other merchants who complained about the taking of their property, but that is insufficient to

compel the conclusion that political opinion was the reason for any harm to him. *See Marquez*, 105 F.3d at 380–81 (deferring to the Board's findings that greed and jealousy, not politics motivated persecution even though alien spoke out against military corruption on radio talk show). As the IJ noted, Chen did not make a broader attack on the government; he therefore is on weaker ground than the alien in *Marquez*. *See id.* at 381 (stating the issue as whether the retaliation was because of alien's public condemnation and broader attack on military corruption).

The IJ found, and the Board agreed, that Chen's situation should be characterized as a personal property dispute rather than an expression of political opinion. As we have said, "[a] personal dispute, no matter how nasty, cannot support an alien's claim of asylum." *Id.* at 380. Chen was unable to articulate any political opinion, and he admitted that he did not belong to any political organizations, and that other than this single protest, he participated in no other political activities. The record does not compel the conclusion that any harm to Chen was due to his political opinion. *See id.* (deferring to the finding that "greed and jealousy, and not politics, fed the feud" between bank official and government leader).

*Chen v. Holder*, 607 F.3d 511 (7th Cir. 2010), does not assist the petitioner. Contrary to his view, the case does not hold that a public complaint regarding an unjust taking of property can amount to persecution based on political opinion. The case involved a remand for a determination whether filing suit against a unit of government could constitute a form of political opinion. *Id.* at 514. Assuming that it could, Weiping Chen did not sue the government. Nor does *Chen v. Gonzales*, 489 F.3d 861 (7th Cir. 2007), aid him. Severe economic depri-

vation may amount to persecution, *id.* at 863, but *Chen v. Gonzales* does not address what is at issue here—whether the persecution is based on political opinion.

Finally, Chen challenges the Board's and IJ's conclusion with respect to his claim for protection under the CAT. Our review is deferential, and we will "reverse only if a reasonable factfinder would have to conclude that [Chen] met his burden." *Bitsin*, 719 F.3d at 630–31. "[T]o establish eligibility for relief under the CAT, [Chen] must show that 'it is more likely than not that he … will be tortured' if he is returned to [China]." *Id.* at 631 (quoting *Rashiah v. Ashcroft*, 388 F.3d 1126, 1131 (7th Cir. 2004)). Since the standard under the CAT is even higher than that for withholding of removal, it follows that Chen cannot prevail under the CAT. *See, e.g.*, *Restrepo v. Holder*, 610 F.3d 962, 965 (7th Cir. 2010). The record does not compel a contrary conclusion.

### III.    Conclusion

Chen's petition for review is DISMISSED for lack of jurisdiction with respect to the claim for asylum and DENIED with respect to the requests for withholding of removal and protection under the CAT.