NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 8, 2014
Decided October 21, 2014

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-1311

| | |
|---|---|
| TINE D. KARAMOY and<br>JESSICA S. AUDINA,<br>  *Petitioners*<br><br>  *v.*<br><br>ERIC H. HOLDER, JR.,<br>Attorney General of the United States,<br>  *Respondent*. | Petition for Review of an Order<br>of the Board of Immigration Appeals.<br><br>Nos. A089-063-302 & A089-063-303 |

**O R D E R**

Tine Karamoy and her 17-year-old daughter, Jessica Audina, are Christian citizens of Indonesia, a predominantly Muslim country. Karamoy came to the United States with Audina in 2005 and applied for asylum based on religion and race, with Audina as a derivative beneficiary. (Karamoy is Indonesian but says that she looks Chinese based on her part-Mongolian descent.) After the application was denied and removal proceedings were initiated, Karamoy renewed her asylum application and added requests for withholding of removal and protection under the Convention Against Torture. An immigration judge denied relief and the Board of Immigration

Appeals affirmed. Karamoy and Audina petitioned for review. Because substantial evidence supports the denial of relief, we deny the petition.

## I. Background

Karamoy and Audina were admitted to the United States in Chicago, Illinois, on April 7, 2006, as nonimmigrant visitors with permission to remain for six months. *See* 8 U.S.C. § 1101(a)(15)(B). They were granted an extension to stay for an extra six months, until April 7, 2007. Two days before they were supposed to leave the country, Karamoy (and derivatively her daughter) applied for asylum. She asserted persecution based on religion (Christianity) and race (Chinese appearance). An asylum officer conducted an interview, denied the application, and served Karamoy and her daughter Notices to Appear for remaining in the United States past their visas' expiration dates. *See* 8 U.S.C. § 1227(a)(1)(C)(i). When Karamoy and Audina appeared before an IJ about a year later, they renewed their asylum application and added requests for withholding of removal and protection under the Convention Against Torture. Nearly four years lapsed before a removal hearing on the merits was held because of successive continuances the IJ granted so that Karamoy could collect supporting documentation.

At the hearing, Karamoy explained why she felt so unsafe in Indonesia and was compelled to leave. First, in 1998 Muslim rioters burned down the Christian-owned bank where she worked; she was able to escape before the bank was torched, she said, but the police had to guard her housing complex for the next several days. That same year Karamoy and her then-infant daughter were heckled on the bus; she claims she was targeted because she looks Chinese. On another occasion, this time in 2005, Karamoy was riding on a train when a man approached her from behind, placed a knife up against her, told her to be quiet, and inappropriately touched her. She did not report the incident because the police will investigate only when bribed. Karamoy also testified that Christian women are targets for rape by Muslim men, and she was readily identified as Christian because she wore a cross necklace and did not wear a headcovering.

Karamoy decided to leave for the United States in 2005 after the assault on the train. Her husband, who is Indonesian, of Chinese descent, and Christian, stayed behind; he and the rest of her family have remained unharmed since she left, though they have received some menacing phone calls from anonymous callers.

The IJ credited Karamoy's testimony but concluded that the isolated events she described did not amount to persecution. Concerning the 1998 riots, the IJ explained that Karamoy's testimony revealed that although she feared for her safety, she suffered no physical harm and was able to return to her residence, which was in an area protected by the police in the days following the riots. As for the bus episode, the IJ acknowledged that it was discriminatory and harassing, but concluded that it was not persecution. And Karamoy offered no evidence that the assault on the train was instigated because she is Christian and of Chinese descent. Lastly, the IJ concluded that Karamoy did not establish a well-founded fear of persecution because her husband—who never left Indonesia—has not experienced any problems based on his race or religion and because country reports show that conditions in Indonesia have stabilized.

Karamoy appealed to the BIA and revised her theory of persecution: She argued that she met her burden of proving past persecution and a well-founded fear of future persecution based on her membership in the social group of "persons Indonesian Muslims believe to harbor the characteristics of being Chinese and Christians." She also urged the BIA to consider humanitarian asylum.

The BIA agreed with the IJ's decision and denied relief, explaining that the riots, the bus threat, and the train assault—as Karamoy described them—did not constitute past persecution. The BIA also concluded that Karamoy's testimony about a few threatening telephone calls to her family was not enough to establish a well-founded fear of persecution based on her Christian religion or Chinese ethnicity. Finally, the BIA concluded that the harm Karamoy experienced did not warrant humanitarian asylum. The BIA did not comment on whether Karamoy adequately proposed a cognizable social group for purposes of her alternate theory of persecution.

## II. Discussion

We begin by noting that in her petition for review, Karamoy continues to modify the basis for her asylum claim: She now frames her claim as being based on membership in "two discrete social groups that suffer persecution in Indonesia: She is Christian and she looks Chinese." Karamoy did not exhaust her social-group argument because she did not present it to the IJ, nor do the social groups in her petition completely match the social group she identified in her appeal to the BIA. This typically would result in

waiver, *see* 8 U.S.C. 1252(d)(1); *Ming-Hui Wu v. Holder*, 567 F.3d 888, 892–93 (7th Cir. 2009); *Korsunskiy v. Gonzales*, 461 F.3d 847, 849 (7th Cir. 2006), but the government does not argue waiver in its brief. Karamoy's social-group claim and the BIA's omitted discussion on that issue, however, are irrelevant because once the BIA concluded that Karamoy did not suffer past persecution, it did not have to address the remaining elements of nexus and protected ground. *See Yadegar-Sargis v. INS*, 297 F.3d 596, 602 n.4 (7th Cir. 2002); *Carvalho-Frois v. Holder*, 667 F.3d 69, 73 (1st Cir. 2012).

Karamoy disagrees with the IJ's and the BIA's conclusions that the harm she suffered in Indonesia does not rise to the level of persecution. In support she points to the events that occurred between 1998 and 2005: the bank burning, the bus taunting, and the train assault.

But the record does not compel a finding of past persecution. Persecution is not defined by the Immigration and Naturalization Act or the BIA, but this court has stated that persecution "involves harms that go beyond mere harassment," *Pathmakanthan v. Holder*, 612 F.3d 618, 622 (7th Cir. 2010) (internal quotation marks and citation omitted), and includes "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, torture, behavior that threatens the same, and non-life-threatening behavior such as torture and economic deprivation if the resulting conditions are sufficiently severe," *Weiping Chen v. Holder*, 744 F.3d 527, 532 (7th Cir. 2014) (internal quotation marks and citation omitted); *see also Haider v. Holder*, 595 F.3d 276, 286–87 (6th Cir. 2010) (listing same examples of persecution); *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 340–41 (2d Cir. 2006) (collecting definitions among circuits of persecution). The deeply uncomfortable encounters that Karamoy experienced do not fall within this definition. *See, e.g., Bathula v. Holder*, 723 F.3d 889, 899–900 (7th Cir. 2013) (receiving numerous death threats and being followed, attacked with rocks, and having car run off road not past persecution); *Borovsky v. Holder*, 612 F.3d 917, 921–22 (7th Cir. 2010) (multiple beatings, verbal threats, and racial slurs not past persecution); *Sepulveda v. U.S. Attorney Gen.*, 401 F.3d 1226, 1229, 1231 (11th Cir. 2005) (three death threats and bombing of workplace not past persecution).

Karamoy next argues that the IJ and BIA wrongly concluded that she did not establish a well-founded fear of persecution because Sunni Muslim extremists violently attack Christians in Indonesia. She does not point to specific attacks against Christians but contends that attacks, generally, are on the rise and asks us to take judicial notice of

the U.S. State Department's 2013 Human Rights Report and a 2014 Human Rights Watch report on Indonesia.

Though we may take judicial notice of the reports, *see Jiang v. Holder*, 639 F.3d 751, 756 n.2 (7th Cir. 2011); *Ayele v. Holder*, 564 F.3d 862, 872–73 (7th Cir. 2009), nothing in them suggests that Karamoy would be singled out for persecution if she returns to Indonesia. For example, Human Rights Watch counted more than 200 attacks by Sunni militants against religious minorities in 2012 and 2013, but the attacks are not broken down to reflect what percentage were against Christians (other victims included Ahmadiyah, Shia, and Sufis). *See* HUMAN RIGHTS WATCH, WORLD REPORT 2014, INDONESIA, http://www.hrw.org/world-report/2014/country-chapters/indonesia?page=2 (last viewed Oct. 17, 2014). Thus, the report is largely unhelpful here. At best Karamoy has shown that she is part of disfavored group, and that is insufficient to qualify for asylum. *See Halim v. Holder*, 755 F.3d 506, 514–15 (7th Cir. 2014); *Salim v. Holder*, 728 F.3d 718, 723–24 (7th Cir. 2013).

Lastly, Karamoy challenges the BIA's denial of humanitarian asylum and maintains that she lives in "fear that she will be removed and sent back to the same condition she fled." But Karamoy is ineligible for humanitarian asylum because she has not established past persecution. *Georgieva v. Holder*, 751 F.3d 514, 523 (7th Cir. 2014); *Matter of L–S–*, 25 I. & N. Dec. 705, 710 (BIA 2012); *Matter of Chen*, 20 I. & N. Dec. 16, 19 (BIA 1989).

Accordingly, we DENY the petition for review.