**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 22, 2015[*]
Decided December 22, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 15-2307

| | |
|---|---|
| HARKAMAL SINGH, *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | No. A087-760-934 |
| LORETTA E. LYNCH, Attorney General of the United States, *Respondent*. | |

**O R D E R**

Harkamal Singh, a native and citizen of India, petitions for review of an order upholding the denial of his application for asylum and withholding of removal—based on past persecution on account of an imputed political opinion—as well as for protection under the Convention Against Torture (CAT). We deny the petition in part and dismiss it in part.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

Singh, a 29-year-old Sikh from the state of Punjab, claims that in September 2009 police arrested him at home without explanation. While being detained, he learned that he had been arrested on account of his friendship with a man whom police suspected of plotting to kill a religious leader from another village. During his seven-day detention, Singh testified, the police interrogated him about the assassination plot, and on four occasions they electrocuted him and beat him with wooden sticks and leather belts for up to an hour. The police accused him of giving information to the "wrong people," despite his denials of knowing anything about the plot or even the identity of these "wrong people." After his father bribed the police to secure his release, Singh was hospitalized for two days. He continued receiving treatment at his uncle's house for a month before fleeing India. About a month later, in December 2009, he was apprehended by the Department of Homeland Security while crossing the border from Mexico into the United States.

Four months later, at an initial hearing before an immigration judge in Arizona, Singh stated through counsel that he intended to file an application for asylum. No application followed, however. Venue was changed to Chicago, where a hearing before an IJ was held in June 2011. At the hearing, the IJ observed that an application for asylum had yet to be filed and that Singh, represented by new counsel, would have to explain the late filing.

Not until nearly two years later, in March 2013, did he file an application, in which he added claims for withholding of removal and relief under CAT. In his application, he identified his religion as Sikh and stated that he had been tortured by the Indian police based on his religion and his connection to their investigation into the assassination plot. At a merits hearing several months later, Singh, represented yet again by new counsel, briefly recounted his arrest and interrogation. When asked why he could not be returned to India, he gave no reason except being "scared," and he could not elaborate why relocation to another part of India would be infeasible. Singh added that he filed his asylum application late because no one told him about the deadline.

The IJ denied all of Singh's requests for relief. The IJ denied the asylum request as untimely because Singh did not file it within the one-year deadline and he had not demonstrated that his delay was due to changed or extraordinary circumstances. The IJ, acknowledging that the case was governed under the REAL ID Act, 8 U.S.C. § 1158(b)(1)(B), found that Singh's testimony, though not incredible, was "generally vague and lacking in any detail" and insufficiently persuasive or specific to meet his

burden of proof without corroboration. Regarding withholding of removal, the IJ determined that Singh could not establish that any harm he suffered rose to the level of persecution because he "wholly failed to corroborate his testimony." And in the alternative, the IJ found that Singh had not shown the requisite nexus between any protected ground and the harm he suffered or fears in the future at the hands of the Indian police (specifically, he failed to show that any beating he received was on account of a protected ground rather than as part of a criminal investigation into the assassination plot). Regarding Singh's request for CAT relief, the IJ concluded that Singh failed to support his request with any evidence in his "skeletal" application or through his testimony, and his submitted documentation addressed merely "generalized violence and civil unrest" and nothing more specific or personal to show that he probably would be subject to torture.

The Board assumed that Singh was credible, yet still upheld the IJ's decision. With regard to Singh's request for withholding, the Board added that nothing in the record supported his contention that he was mistreated in India based on an imputed political opinion. And to the extent Singh suggested that his prior lawyers rendered ineffective assistance by failing to notify him of the one-year filing deadline for asylum, he had failed to comply with the required procedure of *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988).

Singh, now proceeding *pro se*, first challenges the denial of asylum, maintaining that his attorneys' failure to inform him of the filing deadline should excuse the late application. But as the Board pointed out, the record does not reflect that Singh complied with the requirements for raising an ineffective assistance claim, see *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988), and we otherwise lack jurisdiction to review the determination that Singh's asylum application was untimely or that the delay was not excused by extraordinary or changed circumstances. See 8 U.S.C. § 1158(a)(3); *Tian v. Holder*, 745 F.3d 822, 825–26 (7th Cir. 2014); *Chen v. Holder*, 744 F.3d 527, 531–32 (7th Cir. 2014).

Singh next challenges the denial of withholding of removal, arguing that the IJ erred in requiring corroborating evidence of persecution. He argues, first, that his testimony alone was sufficient to carry his burden of proof. It is true that testimony alone may be sufficient to show persecution, as long as it is sufficiently credible, persuasive, and specific, see 8 U.S.C. § 1158(b)(1)(B)(ii); *Hassan v. Holder*, 571 F.3d 631, 637 (7th Cir. 2009); but under the REAL ID Act, an IJ may demand corroborating evidence—even if the judge finds the applicant's testimony credible—and "'such evidence *must be provided*

unless the applicant does not have the evidence and cannot reasonably obtain the evidence.'" *Darinchuluun v. Lynch*, 804 F.3d 1208, 1214 (7th Cir. 2015) (quoting 8 U.S.C. § 1158(b)(1)(B)(ii)); see *Chen*, 744 F.3d at 532–33. As the IJ explained, Singh's testimony was too scant and lacking in detail to be persuasive on its own. Moreover, Singh cannot suggest that corroborating evidence was unavailable, for at the hearing his attorney asked the IJ to accept unfiled photocopies of Singh's personal statement and affidavits from his family members (the IJ declined to do so). Singh also argues that he was denied an opportunity to explain the lack of corroborating evidence. But that is incorrect: at the hearing his attorney acknowledged that he had provided the government with copies of Singh's personal statement and family members' affidavits but simply failed to file the evidence with the court.[1] Singh's failure to provide reasonably available corroborating evidence of persecution alone dooms his claim for withholding of removal. See *Tian*, 745 F.3d at 828; *Raghunathan v. Holder*, 604 F.3d 371, 379 (7th Cir. 2010).

With regard to the IJ's alternative finding that he lacked the required nexus to a protected ground, Singh now traces the harm he suffered to imputed political opinion. He contends that he was mistreated, not in the course of a criminal investigation, but rather on account of his association with a group of "wrong people" who, police believed, sought to assassinate a religious leader. But Singh has never identified the wrong people whose political opinion was imputed to him or what that political opinion was.

Finally, Singh challenges the denial of CAT relief, arguing that the IJ and the Board both failed to consider his testimony that he was targeted by the police and could not relocate in India, and failed to address the country reports and articles describing police brutality in India and Punjab. But as the IJ properly explained, Singh did not testify about the possibility of facing torture upon his return, and his evidence of "generalized violence and civil unrest" in India and Punjab did not reflect how he personally might be harmed. See *Lenjinac v. Holder*, 780 F.3d 852, 856 (7th Cir. 2015). Given the minimal evidence Singh presented—either through testimony or supporting documents—we agree with the Board that Singh cannot show a likelihood that he would be tortured if returned to India.

---

[1] Singh attaches to his petition a copy of a personal statement, but we may consider only evidence included in the administrative record. See *Cruz-Moyaho v. Holder*, 703 F.3d 991, 998 (7th Cir. 2012); *Escoto-Castillo v. Napolitano*, 658 F.3d 864, 866 (8th Cir. 2011).

We DISMISS the petition for lack of jurisdiction with respect to Singh's claim for asylum, and we DENY the petition with respect to his claims for withholding of removal and protection under CAT.