FILED
United States Court of Appeals
Tenth Circuit

January 10, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ZHIPENG ZENG,

     Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

     Respondent.

No. 19-9539
(Petition for Review)

_____

**ORDER AND JUDGMENT***
_____

Before **HARTZ**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Petitioner Zhipeng Zeng is a native and citizen of China who seeks review of the

denial by the Board of Immigration Appeals (BIA) of his application for asylum,

withholding of removal, and protection under the Convention Against Torture (CAT).

Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the petition for review.

---

* After examining the briefs and appellate record, this panel has determined unanimously
that oral argument would not materially assist in the determination of this appeal. *See*
Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted
without oral argument. This order and judgment is not binding precedent, except under
the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R.
32.1.

## I.    BACKGROUND

Petitioner was admitted to the United States as a nonimmigrant visitor.  He filed his application for relief on July 3, 2013.  An asylum officer denied his application and referred his case to an immigration judge (IJ).  The Department of Homeland Security then commenced removal proceedings against Petitioner for remaining in the United States longer than permitted.  *See* 8 U.S.C. § 1227(a)(1)(B).

At his merits hearing Petitioner testified as follows:  In March 2012 he received a notice from the demolition department of Jilin City in China that the building he resided in with his mother was going to be demolished by May 1.  He refused to move, though, until he received additional compensation, believing that the price he was offered was too low.  The demolition department turned off the building's utilities early in April.

In the early morning of June 21, Petitioner went downstairs in his building and discovered about 100 people from the demolition department.  They asked him to vacate that same day.  He replied that he still would not move without a better offer.  When they would not allow him to leave the building, he went upstairs to call the police, who said they could not help him.  He came downstairs again later that morning and repeated that he would not move until he received reasonable compensation.  He was attacked with knives by five workers, resulting in his hospitalization for 28 days.  He believed he was attacked because he "was strongly against this demolition policy from the government." Certified Administrative Record (CAR) 170; *see id*. at 160 (describing the policy he opposed as "the government would try to occupy people's lands by force").  Later a

neighbor was also beaten, but he did not know the person and had never communicated with him.

During Petitioner's hospitalization he and his mother received threatening phone calls telling them not to involve the police or complain about the attack. Also during that time, the unit he shared with his mother was demolished. The two moved to a new home in the countryside. Even in the new home he received repeated phone calls, warning him that he should not take legal action against his attackers or contact the police. Because he feared he could still be harmed by his attackers, who had not yet been caught, he fled to the United States about a year after the attack.

The IJ denied (1) Petitioner's claims for asylum and withholding because he had not shown he was attacked on account of his political opinion, and (2) his claim for protection under the CAT because he had not shown that his attackers were public officials or that they were acting with the acquiescence of the government. The BIA affirmed the IJ's decision without opinion.

Petitioner sought review in this court, but we did not address the merits. At the request of Petitioner and the government, we remanded to the BIA to consider the IJ's conclusion that the harm Petitioner suffered constituted past torture, but that he was still ineligible for relief under the CAT because he did not establish that his attackers were public officials or individuals acting with the acquiescence of such officials. On remand the BIA in turn remanded to the IJ for further fact-finding regarding the identities of the attackers.

3

The parties agreed that no additional evidentiary hearing was needed and that the decision on remand could be based on the existing record. Because the IJ who originally handled the matter had been transferred, a different IJ was assigned to the case. But instead of making a finding as to the identities of Petitioner's attackers, the IJ ruled that, even assuming they were public officials, Petitioner was still ineligible for protection under the CAT as he could not show that it was more likely than not he would be tortured if returned to China. (Going beyond the scope of the remand, the IJ also denied asylum and withholding of removal, ruling that Petitioner failed to establish that he was harmed because of his political opinion.)

Petitioner appealed the IJ's decision to the BIA, which affirmed the IJ's denial of relief under the CAT because he had not established likely future torture. He has petitioned for our review of that decision, as well as the BIA's earlier denial of his asylum and withholding claims. We address all three claims for relief.

## II. DISCUSSION

"Our scope of review directly correlates to the form of the BIA decision." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007). When a single BIA member issues a summary affirmance without opinion, as with the first BIA opinion in Petitioner's case, we consider the IJ's opinion to be the agency decision for the purpose of appeal and "look[] to that opinion to determine the agency's rationale." *Id.* But "if a single BIA member issues a brief order affirming, modifying, or remanding the IJ's order," as with the second BIA decision in this case, then the BIA decision is considered the final removal order. *Id.* In that circumstance, however, "we may consult the IJ's

4

opinion to the extent that the BIA relied upon or incorporated it." *Id.* (internal quotation marks omitted). "We review . . . legal determinations de novo, and . . . findings of fact under a substantial-evidence standard." *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005). Unless "any reasonable adjudicator would be compelled to conclude to the contrary," we treat the findings of fact as conclusive. 8 U.S.C. § 1252(b)(4)(B).

### A.    Asylum and Withholding of Removal

To be eligible for asylum and withholding of removal, an applicant must demonstrate he was persecuted or has a well-founded fear of persecution *on account of* his race, religion, nationality, membership in a particular social group, or political opinion. *See Niang*, 422 F.3d at 1194, 1195. An applicant must therefore provide evidence that the individuals who harmed him were motivated to do so because of the protected ground, thus establishing a "nexus" between the harm and the ground. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992) (because asylum statute "makes motive critical, [applicant] must provide *some* evidence of [his persecutors' motives], direct or circumstantial"); *Niang*, 422 F.3d at 1200. On appeal Petitioner challenges the IJ's determination that he was not attacked because of his political opinion. He contends that he was attacked for having an imputed "anti-government political stance," as he "protested by words and action the unfair treatment by the Chinese government on the barbaric eminent domain policy." Aplt. Br. at 14.

The evidence here, however, supports the IJ's finding that Petitioner opposed his building's demolition for only personal reasons, not because he held a political opinion against the government's policy of eminent domain. He never organized or participated

5

in any protests of the demolition of his building or of others nearby. When asked why he had not protested other demolitions, he said that "it wasn't the place I, I lived so I did not protest." CAR 176. He also expressed several times that his primary concern was inadequate financial compensation. Although Petitioner said he told the demolition department that he was "very strongly against this policy to demolish our homes," CAR 171, he also told an official he would move if he was offered enough compensation.

The Seventh Circuit confronted a similar circumstance in *Weiping Chen v. Holder*, 744 F.3d 527 (7th Cir. 2014). The petitioner had been detained and beaten for refusing to vacate his store and protesting its demolition. *See id.* at 530. But he had "not engage[d] in any of the classic examples of political activity," having taken part in only one public sit-in. *Id.* at 534. The court concluded that his harm was the result of "a personal property dispute rather than an expression of political opinion." *Id.* Unpublished opinions by other circuits have also differentiated between a personal opposition to demolition of one's property and holding a political opinion against China's eminent-domain policy. *See, e.g., Bin Huang v. U.S. Att'y Gen.*, 569 F. App'x 715, 719 (11th Cir. 2014) ("Huang's incident involved a personal dispute with the government, where he was beaten for trying to stop his home's demolition, not for his taking a general political stance against corruption."); *Zhen Hui Liu v. Mukasey*, 257 F. App'x 424, 426 (2d Cir. 2007) ("Liu and his father protested the confiscation of their family's land in an effort to protect the family's livelihood, not challenge the legitimacy of China's government.").

Petitioner urges us to follow the Ninth Circuit's decision in *Xinbing Song v. Sessions*, 882 F.3d 837, 841–42 (9th Cir. 2017), which held that a petitioner who was

detained and beaten for protesting the Chinese government's attempt to demolish a building in which he owned a unit was persecuted for his "anti-government anti-eminent domain political opinion."[1] But the petitioner in *Song* had organized a protest with over 100 neighbors, identified himself to a government official as a protest leader, and hung a banner from his unit stating that he "would rather die than give up his property." *Id*. at 840. Government officials also denounced Song's protest for being "anti-government." *Id*. Petitioner here, in contrast, was not involved in any activity that elevated his opposition to his building's demolition to an actual or perceived political action.

Petitioner nevertheless contends that his eligibility for asylum and withholding cannot be resolved without an identification of his attackers. He also asserts that because he was found to be a credible witness, there should be no dispute that his attackers were government officials. But regardless of the identity of his attackers, his failure to establish that he was harmed because of his political opinion precludes asylum eligibility. This lack of nexus also disposes of his argument that a "severe form of past persecution alone, as Petitioner here with permanent handicap, and without more, entitles the victim to an asylum grant." Aplt. Br. at 11. And because the burden of proof for withholding of removal is "more demanding" than that for asylum, he necessarily fails to show he is entitled to relief under the withholding statute as well. *Elzour v. Ashcroft*, 378 F.3d 1143, 1149 (10th Cir. 2004) (internal quotation marks omitted).

---

[1] In his brief, Petitioner cites to the Ninth Circuit's decision in *Song v. Sessions*, 877 F.3d 889 (9th Cir. 2017), but that decision was amended and superseded at 882 F.3d 837 (9th Cir. 2017).

## B.    Convention Against Torture

To receive the protections of the CAT, an applicant must "show that it is more likely than not that he or she would be tortured if removed to [a particular] country," *Elzour*, 378 F.3d at 1150, and that the torture would be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," 8 C.F.R. § 1208.18(a)(1).  Under the CAT an applicant "is not entitled to a presumption of future torture based on evidence of past torture; nor does a showing of past torture automatically render [him] CAT eligible." *Niang*, 422 F.3d at 1202. Petitioner argues that the BIA erred in denying relief under the CAT by (1) ignoring alleged evidence of his risk of future torture, and (2) failing to adhere to this court's mandate "to clearly make an identification of the perpetrators" of the attack on Petitioner. Aplt. Br. at 12.  Both grounds are without merit.

First, Petitioner contends that the BIA did not consider that he attempted to have his attackers arrested by the police and consequently received threats to his and his mother's life and safety.  But the BIA did refer to the IJ's findings, which considered the threats Petitioner received while hospitalized and described Petitioner's efforts to contact the police in hopes of locating his attackers.  Although Petitioner argues that there is no indication that the threats ceased when he left China, he has offered no evidence of any present threats.  His testimony before the IJ claimed only that while he was hospitalized and while he was out of the hospital receiving treatment for his injuries, he and his mother received phone calls in 2012 and 2013 threatening to hurt him if he contacted the police.  The lack of evidence of any recent or ongoing threats, coupled with the already-

8

completed demolition of the building and the ability of his mother to live in safety after the attack, provides substantial evidence to support the BIA's decision that he failed to show likely future torture upon return.

Petitioner claims that the BIA also erred because it did not make a finding of the identity of his attackers in accordance with our remand order and that this mistake requires that we remand again to the BIA. But Petitioner cannot show how he was harmed by the absence of this finding. *See Nazaraghaie v. INS*, 102 F.3d 460, 465 (10th Cir. 1996) ("[E]ven assuming arguendo that the BIA failed to weigh certain pieces of evidence fully, the result in this case would be no different. Any error on the part of the BIA is therefore harmless . . . ."). Instead of making this finding, the BIA *assumed* that his past torture was "by or at the acquiescence of public officials," CAR 4, but determined that he still could not establish likely future torture and was therefore ineligible for relief under the CAT.

## III.    CONCLUSION

We **DENY** the petition for review.

Entered for the Court

Harris L Hartz
Circuit Judge

9